```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF TEXAS
                         DALLAS DIVISION
```

WILLIAM D. BROWN, as             §
Receiver for AmeriFirst          §
Funding, Inc., et al.,           §
                                 §
              Plaintiff,         §
                                 § Civil Action No. 3:08-CV-0186-D
VS.                              §
                                 §
RONALD D. WHITCRAFT, et al.,     §
                                 §
              Defendants.        §

                        MEMORANDUM OPINION
                           AND ORDER

In this litigation that arises from the receivership established in *SEC v. AmeriFirst Funding, Inc.*,[1] defendants move for a more definite statement under Fed. R. Civ. P. 12(e), and defendant Ronald Whitcraft ("Ronald") moves to allow the sale of a residence. For the reasons that follow, the court grants in part and denies in part both motions.

                                I

The court-appointed temporary receiver ("Receiver") in the AmeriFirst Funding litigation brings this lawsuit against defendants Ronald and Lois Whitcraft (the "Whitcrafts") to recover a residence located at 6717 Lakewood Boulevard, Dallas, Texas

---

[1]*See SEC v. AmeriFirst Funding, Inc.*, 2008 WL 282275, at *1-*2 (N.D. Tex. Feb. 1) (Fitzwater, C.J.) (providing background to the receivership and the underlying securities lawsuit), *appeals docketed*, NO. 08-10174 (5th Cir. Feb. 26, 2008), and No. 08-10257 (5th Cir. Mar. 20, 2008). The principal lawsuit is a civil enforcement action brought by the Securities and Exchange Commission. The court appointed a temporary receiver to take control of defendants' and relief defendants' assets and property.

("Lakewood House"), damages for the use of the Lakewood House since the time that title was transferred to Ronald, and damages allegedly caused by Ronald's breaches of his fiduciary duties as President of InterFinancial Holdings Corp. ("InterFinancial"). Focusing on various components of the complaint, defendants move for a more definite statement under Rule 12(e). The Receiver has not responded to this motion.

Ronald also seeks an order permitting him to sell the Lakewood House and use the proceeds to pay off a first mortgage owed to Hess Financial Corp. ("Hess Financial"); pay any outstanding taxes and property insurance; and place the remaining funds in escrow until this lawsuit is resolved. The Receiver opposes Ronald's motion, although he does not oppose a sale *per se*. The Receiver argues that Ronald's proposed payment plan—which includes paying off the first mortgage held by Hess Financial—prejudices the Receiver's position that the Lakewood House is and was a receivership asset and that Ronald is simply the nominal owner. Moreover, the Receiver contends that permitting Ronald to sell the Lakewood House is premature, because Ronald has not yet entered into a contract to sell the property.

II

Defendants direct their Rule 12(e) motion to three portions of the complaint—¶¶ 29, 30-34, and 36—on the basis that they fail to give defendants notice of the Receiver's cause of action, do not

plead fraud with particularity, and fail to state sufficient facts to support a cause of action.

A

A party is entitled to a more definite statement when a portion of the pleadings to which a responsive pleading is allowed "is so vague or ambiguous that the party cannot reasonably prepare a response." Rule 12(e). "[M]otions for a more definite statement are generally disfavored." *Russell v. Grace Presbyterian Village*, 2005 WL 1489579, at *3 (N.D. Tex. June 22, 2005) (Solis, J.) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1377 (2d ed. 1990)); *see also* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1376, at 306 (3d ed. 2004) ("The 1948 Amendment of Federal Rule 12(e) makes it clear that the availability of a motion for a more definite statement is quite restricted."). "Whether to grant a motion for a more definite statement is a matter within the discretion of the trial court." *Russell*, 2005 WL 1489579, at *3 (citing *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir. 1959)). "When a party moves for a more definite statement under Rule 12(e), the court is granted discretion to determine whether the complaint is so vague that the moving party cannot reasonably be required to frame a responsive pleading." *Chapman v. Dallas County Cmty. Coll. Dist.*, 2006 WL 3442057, at *4 (N.D. Tex. Nov. 29, 2006) (Fish, C.J.) (citing *Mitchell*, 269 F.2d at 130).

When a defendant is complaining of matters that can be clarified and developed during discovery, not matters that impede his ability to form a responsive pleading, an order directing the plaintiff to provide a more definite statement is not warranted. *Arista Records LLC v. Greubel*, 453 F.Supp.2d 961, 972 (N.D. Tex. 2006) (Means, J.) (citing *Mitchell*, 269 F.2d at 132).

Nevertheless, parties may rely on Rule 12(e) as a mechanism to enforce the minimum requirements of notice pleading. 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1203, at 99 (3d ed. 2004) ("[T]he form and sufficiency of a statement of a claim for relief under Rule 8(a)(2) may be tested . . . by a motion for a more definite statement[.]"); *see also Travelers Indem. Co. of Conn. v. Presbyterian Healthcare Res.*, 313 F.Supp.2d 648, 654 (N.D. Tex. 2004) (Solis, J.) (denying Rule 12(e) motion because the counterclaim to which the motion was directed was sufficient under Rule 8(a)); *J & J Mfg., Inc. v. Logan*, 24 F.Supp.2d 692, 703 (E.D. Tex. 1998) (indicating that pleading withstands Rule 12(e) challenge if it meets Rule 8(a)'s requirements); 5C Wright & Miller, *supra*, § 1377, at 351 ("[A] complaint that is sufficient under Rule 8 in most cases should provide as much information as the defendant needs to frame a responsive pleading—or, at least, is entitled to at that stage of the proceeding."). Rule 8(a)(2) provides that a pleading that states a claim for relief must contain "a short and plain statement

of the claim showing that the pleader is entitled to relief." "Pursuant to Rule 8(a), a complaint will be deemed inadequate only if it fails to (1) provide notice of circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist." *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999).

Similarly, a party may rely on Rule 12(e) to challenge the sufficiency of a pleading under Rule 9(b). *See* 5C Wright & Miller, *supra*, § 1376, at 330-31 ("Even though Rule 9 itself contains no mechanism for enforcing its terms, numerous cases make it clear that the common practice has been to use a motion under Rule 12(e) for that purpose."); *see also Cates v. Int'l Tel. & Tel. Corp.*, 756 F.2d 1161, 1180 (5th Cir. 1985) (stating that pleadings deficient under Rule 9(b) "were doubtless subject to motions for a more definite statement under Fed. R. Civ. P. 12(e)[.]"). When a party invokes Rule 12(e) to challenge a complaint's compliance with Rule 9(b), it necessarily requests that the plaintiff replead rather than dismissal of the fraud claim. When a party seeks *dismissal*, rather than a more definite statement, for failure to plead fraud with particularity, a Rule 12(b)(6) motion is a proper procedural mechanism. *See, e.g., Coates v. Heartland Wireless Commnc'ns, Inc.*, 55 F.Supp.2d 628, 633 n.4 (N.D. Tex. 1999) (Fitzwater, J.) ("Although defendants do not identify in their motion the rule on

which they rely to seek dismissal, their motion should be treated as a motion to dismiss for failure to state a claim, regardless whether it is based on Rule 9(b), Rule 12(b)(6), or both." (citing *Shushany v. Allwaste, Inc.*, 992 F. 2d 517, 520 (5th Cir. 1993) (holding that "[a] dismissal for failure to state fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim."))).

Rule 9(b) provides, in relevant part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b). A complaint alleging fraud must specify the "'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [the person] obtained thereby.'" *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)). A plaintiff must "'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177-78 (5th Cir. 1997)). In other words, the requirements are analogous to "the first paragraph of a newspaper story, namely the who, what, when, where, and how." *Melder v. Morris*, 27 F.3d 1097, 1100 n.5

(5th Cir. 1994) (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). This Rule should be applied "with force, without apology." *Williams*, 112 F.3d at 178. "'[T]he particularity demanded by Rule 9(b) differs with the facts of each case[.]'" *United States ex rel. Wilkins v. N. Am. Constr. Corp.*, 173 F.Supp.2d 601, 613 (S.D. Tex. 2001) (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000)); see *Williams*, 112 F.3d at 178 (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific.").

Rule 9(b) is not intended, however, "to procure punctilious pleading detail." *Steiner v. Southmark Corp.*, 734 F. Supp. 269, 273, *recon. denied*, 739 F. Supp. 1087 (N.D. Tex. 1990) (Fitzwater, J.). It serves neither "as a throwback to the hypertechnical pleading requirements of the Field Code nor requires needlessly repetitive pleading." *Id.* (citing *In re Commonwealth Oil/Tesoro Petroleum Corp. Sec. Litig.*, 467 F. Supp. 227, 251 (W.D. Tex. 1979) (Higginbotham, J.)). Rule 9(b) must be "'read in conjunction with [Rule] 8 which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting *Landry v. Air Lines Pilots Ass'n Int'l AFL-CIO*, 892 F.2d 1238, 1264 (5th Cir. 1990) (some internal quotation marks omitted)). Thus it must be viewed in light of Rule 8(a)'s goal of "simple, concise, and direct" pleadings. *Williams*, 112 F.3d at 178 (quoting Rule 8(e)(1)).

- 7 -

> The court's key concern in assessing a complaint under Rule 9(b) is to determine whether the plaintiff seeks to redress specific wrongs or whether the plaintiff instead seeks the opportunity to search out actionable wrongs. The complaint must be sufficiently particular to show that the plaintiff is not seeking a license to go fishing for indicia of fraud.

*Garcia v. Boyar & Miller, P.C.*, 2007 WL 2428572, at *4 (N.D. Tex. Aug. 28, 2007) (Fitzwater, J.) (internal quotation marks omitted).

B

1

Paragraph 29 of the complaint alleges:

> As a result of the actions of the Whitcrafts and with their knowing consent, [Jeffrey C. Bruteyn] has enjoyed for free the use of the Lakewood House that was paid for with defrauded investor funds. Plaintiff Receiver seeks a judgment for the reasonable value of the use of the Lakewood House from the date title was conveyed into [Ronald] through the date of judgment.

These factual allegations may apprise defendants of circumstances that give rise to a cause of action. But it cannot be gleaned from these facts what is the basis for the Receiver's claim for relief. Defendants cannot reasonably be expected to file a responsive pleading to a claim that does not adequately plead an underlying cause of action. Therefore, the court grants defendants' Rule 12(e) motion as to ¶ 29.

In the relevant portions of ¶¶ 30-34 of the complaint, the Receiver alleges:

> [Ronald] is listed as President of Relief Defendant [InterFinancial] in documents filed with the Nevada Secretary of State. As the President of [InterFinancial], [Ronald] had a fiduciary duty to man[a]ge the affairs of InterFinancial. [InterFinancial] was a fictitious business, did not own any assets and did not operate as a business. Its sole purpose was to defraud investors who purchased its stock on the Pink Sheets. [Ronald] breached his fiduciary duty and as a result, [InterFinancial] has sustained damages. Those damages consist of all the funds expended by InterFinancial, which includes all funds spent promoting InterFinancial as a real business when in fact it was not . . . . The foregoing fraud and breach of fiduciary duty [were] committed intentionally with malice. Exemplary damages should be awarded against the Whitcrafts.

A breach of a corporate fiduciary duty does not necessarily involve fraud. But by premising his breach of fiduciary duty claim on fraud, the Receiver subjects his pleadings to the heightened pleading standard of Rule 9(b). *Peters v. Metro. Life Ins. Co.*, 164 F.Supp.2d 830, 836 (S.D. Tex. 2001) ("Rule 9(b) also applies to a claim for breach of fiduciary duty when the claimed breach rests upon the same allegations as a fraud claim."). The complaint alleges that InterFinancial was a fictitious business and did not own any assets. Without alleging what was represented to investors contrary to these facts, however, InterFinancial's business practices were not necessarily fraudulent. Moreover, the complaint

does not specify how Ronald was involved in defrauding investors. Averring that Ronald was the President of InterFinancial insufficiently alleges his involvement in the fraud under Rule 9(b). Consequently, the court grants defendants' Rule 12(e) motion as to ¶¶ 30-34 of the complaint.

3

Defendants seek Rule 12(e) relief regarding ¶ 36 of the complaint, in which the Receiver avers:

> In the event that the Receiver does not recover title to the Lakewood House, the Whitcrafts are liable for princip[al] and interest on the $600,000 promissory note and deed of trust securing the note. The Receiver has paid taxes on the property and spent other funds for the upkeep of the property. Additionally, the Whitcrafts are liable for the amount of money spent by Hess Financial for improvements or the value of those improvements to the Lakewood House under the theories of unjust enrichment and money had an received. The Receiver seeks a judgment that it has a purchase money, constructive lien on the property for the amount spent on improvements.

Defendants contend that this part of the complaint, although attempting to state a claim for unjust enrichment and money had and received, fails to plead sufficient facts to support the claim.

"'Money had and received is an equitable doctrine applied to prevent unjust enrichment.'" *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) (quoting *Miller-Rogaska, Inc. v. Bank One, Texas, N.A.*, 931 S.W.2d 655, 662 (Tex. App. 1996, no writ)). "'[A] cause of action for money had and received is less restricted

and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely at the inquiry, whether the defendant holds money, which belongs to the plaintiff.'" *Id.* (quoting *Staats v. Miller*, 243 S.W.2d 686, 687-88 (Tex. 1951)). "A cause of action for money had and received is not based on wrongdoing but instead, 'looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another.'" *Doss v. Homecomings Fin. Network, Inc.*, 210 S.W.3d 706, 711 (Tex. App. 2006, pet. denied) (quoting *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App. 1997, no writ)); *see also Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 860 (Tex. App. 2005, no pet.).

Paragraph 36 of the complaint sufficiently states a claim for money had and received under Rule 8(a)(2). The Receiver alleges that Ronald received money from the Receiver through tax and upkeep expenditures on the Lakewood House and from Hess Financial through payments for the improvement and renovation of the Lakewood House. By characterizing these payments for Ronald's benefit as unjust enrichment, it may fairly be inferred that the money Ronald received in equity and good conscience belonged to another. In pleading such a claim, the Receiver need not anticipate and counter all of the possible bases on which Ronald might be entitled to these payments. It is sufficient that the Receiver alleges that these payments unjustly enriched Ronald. Moreover, because money

had and received does not require any wrongdoing by a defendant, the Receiver is not required to plead facts that specify Ronald's conduct, other than that he received money.  Accordingly, the court denies defendants' Rule 12(e) motion to the extent addressed to ¶ 36.

C

Concerning the parts of defendants' Rule 12(e) motion that the court has granted, the court orders the Receiver to provide a more definite statement within 10 days of the date this memorandum opinion and order is filed.  If the Receiver does not do so, the court will strike ¶¶ 29 and 30-34 from the complaint.  *See* Rule 12(e).

III

The court next addresses Ronald's motion for an order permitting him to sell the Lakewood House.

A

To the extent that the court's orders filed July 2, 2007 and August 2, 2007 (collectively, "Freeze Orders") might apply to the sale of the Lakewood House, Ronald seeks an order exempting him from these orders.  Ronald is attempting to facilitate the sale of the Lakewood House by assuring a proposed buyer that a contemplated transaction can be consummated.[2]  If the Lakewood House is sold,

---

[2]Ronald has listed the Lakewood House through a real estate agent for $1.5 million.

Ronald proposes to apply the proceeds to pay off and discharge a first mortgage with Hess Financial, plus accrued interest; pay off outstanding property taxes and homeowner insurance; and place the balance of the funds in the court registry until the parties have resolved this dispute. The Receiver opposes Ronald's motion, although he does not oppose the sale of the Lakewood House *per se*. Rather, the Receiver argues that Ronald's proposed payment plan prejudices the Receiver's position that Hess Financial, or one of the AmeriFirst entities, owns and has owned the Lakewood House, and that Ronald is simply the nominal owner. The Receiver also maintains that Ronald's payment plan is inconsistent with the parties' joint agreement concerning the sale of the Lakewood House, in which the parties agreed that "all net proceeds from the sale of the home remaining after payment of nominal closing costs will be held in a mutually agreeable escrow pending determination of the parties['] respective rights to those proceeds." Receiver Resp. Ex. B.[3] Furthermore, the Receiver submits evidence that there are no outstanding taxes due,[4] and he posits that Ronald has never been able to show that a homeowner insurance policy exists for the Lakewood House. Last, the Receiver maintains that any request for

---

[3] The court is citing "Exhibit B" because the Receiver did not, as required by N.D. Tex. Civ. R. 7.1(i)(1), include this evidence in an appendix. (Nor, for that matter, did defendants file an appendix in support of their motion.)

[4] The Receiver paid the 2007 property taxes for the Lakewood House on March 14, 2008.

approval to sell the Lakewood House is premature because Ronald has not entered into a contract of sale with a willing buyer.

B

The court first addresses the timing of granting permission to sell the Lakewood House. The court disagrees with the Receiver that exempting Ronald from entering into a contract is premature. The act of entering into a contract of sale automatically transfers equitable title to the Lakewood House. *See*, *e.g.*, *Chambers County v. TSP Dev., Ltd.*, 63 S.W.3d 835, 838 (Tex. App. 2001, pet. denied) ("A contract for sale passes equitable title to the buyer."); *Kimsey v. Burgin*, 806 S.W.2d 571, 576 (Tex. App. 1991, writ denied) ("It is well settled that the purchaser under an executory contract of sale acquires equitable title to the realty[.]"). The Freeze Orders prohibit "assigning," "conveying," or "transferring" covered property. *See* Freeze Order § IV; Supp. Freeze Order § I. Ronald therefore has a reasonable basis to seek an exemption from the Freeze Orders to the extent necessary to enable him to enter into a contract of sale for the Lakewood House, the terms of which would be subject to court approval before the proposed sale could be closed. Granting him this relief will enable him to represent to prospective buyers that court approval of the sale will be forthcoming, provided the terms are deemed reasonable and in the best interest of the Receivership estate.

The court also disagrees with the Receiver's contention that

allowing Ronald to pay off the first mortgage to Hess Financial will prejudice the Receiver's position that a receivership entity is and was the actual owner of the Lakewood House and that Ronald's note and mortgage with Hess Financial are therefore invalid. If Ronald applies $600,000, plus accrued interest, from the sale proceeds to pay off the mortgage to Hess Financial, the Receiver will still be able to assert in this lawsuit the claim that a receivership entity owns the Lakewood House outright, and that the entity owned the property from the date Ronald first became the nominal owner. If it is later determined that Ronald owned the Lakewood House, allowing him to pay off the first mortgage will prevent interest from accruing after the sale of the Lakewood House until the resolution of this lawsuit. Moreover, Hess Financial is under the control of the Receiver. The funds used to retire the first mortgage will be deposited into the Receivership estate, and any remaining funds that exceed what is needed to pay off the mortgage and approved closing costs will be held in escrow until this lawsuit is resolved. And even if it is later decided that another entity, not Ronald, owned the property, the funds used to pay off the first mortgage will be under the Receiver's control, and any profits from the sale will be held in escrow and thus available for recovery by the Receiver.

The court agrees with the Receiver that there is no need to provide for the payment of property taxes because Ronald has not

shown that any are due.  And until Ronald establishes that there is homeowner insurance on the Lakewood House, there is no need to provide for the payment of such insurance.

C

Accordingly, the court grants Ronald's motion to allow sale of Lakewood Residential Property to the extent that it will permit him to enter into a contract of sale, the terms of which will be subject to court approval as part of the process of approving the sale.  In granting this relief, the court exempts him from the Freeze Orders to the limited extent necessary to enable him to enter into such a contract of sale.  After Ronald enters into such a contract, he must promptly apply to the court, with notice to the Receiver, for approval of the sale.  If the sale is approved, and it closes, the court will permit Ronald to pay off the first mortgage owed to Hess Financial and pay approved closing costs, and it will order that any remaining funds be placed in escrow, under the court's control, until the instant lawsuit is resolved.  To the extent Ronald seeks greater relief, his motion is denied.

* * *

The court therefore grants in part and denies in part defendants' February 25, 2008 motion for a more definite statement, and it grants in part Ronald's March 18, 2008 motion to allow sale of Lakewood Residential Property.

**SO ORDERED.**

May 15, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE